Filed 10/9/25

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re CLAUDIA R. et al., Persons Coming Under the Juvenile Court Law. | B344660 (Los Angeles County Super. Ct. No. 17CCJP01046E-F) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>WENDY C.,<br><br>        Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles, Stacy Wiese, Judge.  Conditionally reversed and remanded with directions.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

───────────────────

Wendy C. (Mother) appeals from the juvenile court's orders terminating her parental rights to 11-year-old Claudia R. and seven-year-old Leila R. under Welfare and Institutions Code section 366.26.[1] Mother's sole contention is that the Los Angeles County Department of Children and Family Services (Department) and the court failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and the California Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.).

This appeal raises the question whether a child welfare agency has a duty under section 224.2, subdivision (b), to interview all reasonably available extended family members who may have knowledge of a child's Indian ancestry. It does. As the Supreme Court recently explained in *In re Dezi C.* (2024) 16 Cal.5th 1112, 1140 (*Dezi C.*), although a child welfare agency need not interview extended family members whom it cannot locate after a good faith effort, it must seek to elicit information from extended family members who are "reasonably available to help the agency with its investigation" into whether a child has potential Indian ancestry.

───────────────────

[1]     Further undesignated statutory references are to the Welfare and Institutions Code.

The Department contends it satisfied its duty of inquiry in this case by interviewing Mother and Michael M. (Father) and three extended family members, despite its failure to interview additional extended family members who were reasonably available, because the family members who were interviewed provided sufficient reliable information on the children's ancestry. And, the Department argues, the other extended family members would not have provided meaningful information about the children's Indian ancestry. But in most cases the Department will only know whether other family members have meaningful information if they are asked. Moreover, the information collected by the Department from its interviews with the extended family members was far from reliable—the Department was missing information on both Mother's and Father's paternal ancestries, leaving unexplored two branches of the children's family tree.

Mother and Father denied they had Indian ancestry, and the Department inquired of the maternal and paternal grandmothers and a paternal aunt, who stated they were not aware of any Indian ancestry. But the Department did not inquire of the maternal grandfather, maternal aunt, or maternal uncle, all of whom were in contact with Mother, and their contact information was known to Mother or the Department. The Department also should have asked Father and the paternal grandmother for the paternal grandfather's contact information, and if the Department obtained this information, it should have attempted to reach him. The fact the children's grandmothers and paternal aunt denied any Indian ancestry does not mean the grandfathers and maternal siblings would not have had meaningful information on whether the children had Indian

3

ancestry, especially given that the grandfathers could have had information about their ancestry not known by the grandmothers, paternal aunt, or the parents.

Substantial evidence therefore did not support the juvenile court's finding that ICWA did not apply. We conditionally reverse the juvenile court's order terminating Mother's and Father's parental rights and remand the matter for the court and the Department to comply with the inquiry and notice provisions of ICWA and Cal-ICWA.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Referral, Sustained Petitions, and Termination of Parental Rights*

On April 11, 2022 the Department received a referral alleging that at 3:15 a.m. police officers responded to a 911 call at Mother's apartment building and saw Mother and Father yelling at each other in the courtyard. Claudia and Leila were present and witnessed the altercation. Father was carrying an eight-inch knife and admitted he was under the influence of methamphetamine.

On September 8, 2022 the juvenile court sustained the allegations in an amended petition under section 300, subdivision (b)(1), with respect to Claudia and Leila that Father was a current abuser of methamphetamine; Mother should have known of Father's substance abuse and failed to protect the children; and Mother allowed Father to see the children in violation of a criminal protective order. Further, Father's substance abuse and Mother's failure to protect the children placed them at risk of serious physical harm. The court declared

4

Claudia and Leila dependents of the court, removed them from Father's custody, and placed them with Mother.

On April 26, 2023 the juvenile court sustained a supplemental petition under section 387 alleging Mother failed to comply with the court's order that Mother participate in domestic violence counseling and a subsequent petition under section 342 alleging Mother had a history of substance abuse and tested positive for amphetamine and methamphetamine while the children were under her care. On May 31 the court removed Claudia and Leila from Mother's custody and ordered reunification services. In June 2024 the court terminated Mother's reunification services and set the matter for a selection and implementation hearing (§ 366.26).

At the March 10, 2025 selection and implementation hearing, the juvenile court found by clear and convincing evidence that Claudia and Leila were adoptable and no exceptions to termination of parental rights applied. The court terminated Mother's and Father's parental rights, found adoption was the appropriate permanent plan, and designated the current caretaker as the prospective adoptive parent. Mother timely appealed.

B.      *The Department's ICWA and Cal-ICWA Inquiry*

On June 23, 2022 Mother filed a parental notification of Indian status (ICWA-020) form stating none of the listed factors indicating Indian ancestry applied. At the September 8, 2022 jurisdiction hearing, the juvenile court ordered the Department to inquire of all known relatives of Mother and Father about the children's potential Indian ancestry and to send notices to the applicable tribes if it appeared the children may have Indian ancestry. On September 12 the dependency investigator

5

contacted Mother about her Indian ancestry. Mother stated she did not have any Indian ancestry and suggested the dependency investigator contact the maternal grandmother, Claudia M. Mother added that the social worker should call when Mother's brother (Damien J.) was home so he could translate. When the dependency investigator called the maternal grandmother and asked whether she had any Indian ancestry, she emphatically responded, "No!"

On October 3, 2023 maternal aunt Stephanie contacted the Department and told the social worker she had an interest in caring for the children and visiting them. After conducting an investigation, the social worker contacted Stephanie to discuss visitation or placement, but she did not respond.

On July 22, 2024 the social worker spoke with Father, who was in federal prison. Father stated he was not aware of any Indian ancestry, and he subsequently filed a parental notification of Indian status form stating none of the listed factors indicating Indian ancestry applied. The social worker requested that Father provide contact information for the paternal grandmother, but a prison official responded that Father only had contact information for his sister, Emily S. The social worker did not request Father provide contact information for the paternal grandfather.[2] Emily later told the social worker that she had never "heard of any" Indian ancestry in the family. Emily

---

[2] In response to the social worker's request for information on the paternal grandmother, the prison official provided Emily's contact information and stated, "'Here is the only contact info [Father] has.'" It may well be that Father did not have contact information for the paternal grandfather, but that is unclear from the record given that the social worker never requested it.

provided the social worker with contact information for the paternal grandmother, Martha M. However, Emily stated that she and Father had different fathers. The paternal grandmother stated she did not have any Indian ancestry "on our side of the family." The children's caregiver (a non-related extended family member) also stated she was not aware of any Indian ancestry, but she did not know Father.

At the March 10, 2025 section 366.26 hearing, the juvenile court inquired of Mother whether she had any additional information on the children's Indian ancestry. Mother stated she did not. The court noted the Department had spoken with the paternal aunt (Emily) and the paternal grandmother (Martha), but it did not request the Department provide an update as to other family members. The court made a finding it had no reason to know the children were Indian children under ICWA.

## DISCUSSION

A.     *ICWA and Cal-ICWA Inquiry and Notice Requirements*

Congress enacted ICWA in 1978 "in response to 'rising concern in the mid-1970's over the consequences to Indian children, Indian families, and Indian tribes of abusive child welfare practices that resulted in the separation of large numbers of Indian children from their families and tribes through adoption or foster care placement, usually in non-Indian homes.'" (*Dezi C., supra*, 16 Cal.5th at p. 1128.) To address this concern, "ICWA establishes minimum standards for state courts to follow before removing Indian children from their families and placing them in foster care or adoptive homes and does not prohibit states from establishing higher standards." (*Id.* at p. 1129.) In 2006 the California Legislature passed Senate Bill No. 678 (2005-

7

2006 Reg. Sess.), which mandated compliance with ICWA in all Indian child custody proceedings in an effort to increase compliance with ICWA. (*Dezi C.*, at pp. 1130-1131.)

In dependency proceedings, ICWA and Cal-ICWA require that where the court knows or has reason to know an Indian child is involved, notice must be given to the relevant tribes. (25 U.S.C. § 1912(a); Welf. & Inst. Code, § 224.3, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 5; Cal. Rules of Court, rule 5.481(c)(1).) The notice requirement is at the heart of ICWA because it "enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding." (*Isaiah W.*, at p. 5; accord, *Dezi C., supra*, 16 Cal.5th at p. 1144, fn. 15.)

The juvenile court and child welfare agency "have 'an affirmative and continuing duty' in every dependency proceeding to determine whether ICWA applies by inquiring whether a child *is or may be* an Indian child." (*Dezi C., supra*, 16 Cal.5th at pp. 1131-1132, quoting § 224.2, subd. (a), italics added; see *In re Isaiah W., supra*, 1 Cal.5th at p. 9; Cal. Rules of Court, rule 5.481(a).) The duty to inquire begins with the initial contact with the reporting party, and it continues with the child welfare agency's "first contact with the child and each family member, including extended family members." (§ 224.2, subd. (b)(1); see *Dezi C.*, at p. 1132.) The duty of inquiry continues throughout the dependency proceedings. (*Dezi C.*, at p. 1132; *In re J.C.* (2022) 77 Cal.App.5th 70, 77; see § 224.2, subd. (a).)

Under section 224.2, subdivision (b)(2), once a child is placed into the temporary custody of a "county welfare department," the duty to inquire "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian,

8

extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (See *Dezi C., supra*, 16 Cal.5th at p. 1132; Cal. Rules of Court, rule 5.481(a)(1) [the child welfare agency "must ask . . . extended family members . . . whether the child is or may be an Indian child"]; *In re Y.W.* (2021) 70 Cal.App.5th 542, 551-552 [§ 224.2, subd. (b)(2), "requires the child protective agency to ask . . . ""extended family members"""" whether the child is or may be an Indian child].) An "extended family member," if not defined by the law or custom of the child's Indian tribe, includes "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see Welf. & Inst. Code, § 224.1, subd. (c) [adopting same definition].)

The duty of further inquiry is triggered under section 224.2, subdivision (e), "[i]f the court, social worker, or probation officer has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child." (See *Dezi C., supra*, 16 Cal.5th at p. 1132; *In re T.R.* (2024) 107 Cal.App.5th 206, 219; Cal. Rules of Court, rule 5.481(a)(4).) Further inquiry includes "(1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs (BIA) and State Department of Social Services; and (3) contacting tribes the child may be affiliated with and anyone else that might have information regarding the child's membership or eligibility in a tribe." (*Dezi C.*, at pp. 1132-1133, citing § 224.2, subd. (e)(2)(A)-(C).)

9

We review the juvenile court's factual finding that ICWA does not apply for substantial evidence. (See § 224.2, subd. (i)(2) ["If the court makes a finding that proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."]; *In re C.R.* (2025) 112 Cal.App.5th 793, 800 ["We generally review the juvenile court's factual finding that ICWA does not apply for substantial evidence."]; *In re Josiah T.* (2021) 71 Cal.App.5th 388, 401 ["'"[w]e review the juvenile court's ICWA findings under the substantial evidence test, which requires us to determine if reasonable, credible evidence of solid value supports the court's order"'"].) "[T]he juvenile court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Dezi C., supra*, 16 Cal.5th at p. 1141; accord, *C.R.,* at p. 800; see *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1101 ["'On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case."].)[3]

---

[3] The Supreme Court in *In re Kenneth D., supra*, 16 Cal.5th at page 1101 observed that some Courts of Appeal had applied a "standard substantial evidence test, 'which requires [the appellate court] to determine if reasonable, credible evidence of solid value supports the court's' ICWA finding," but "other courts have used a hybrid standard, reviewing for substantial evidence whether there is reason to know a minor is an Indian child, and reviewing a finding of due diligence and proper inquiry for abuse

10

B.	*Substantial Evidence Does Not Support the Juvenile Court's Finding ICWA Did Not Apply*

The Department contends the statutory mandate in section 224.2, subdivision (b)(2)—that the county welfare department inquire of extended family members whether a child is an Indian child—is limited by cost and practicality, relying on *In re H.B.* (2023) 92 Cal.App.5th 711, 720 (*H.B.*).  Therefore, the Department argues, inquiry of a single extended family member on Mother's side of the family and two family members on Father's side of the family (and an unrelated caregiver) satisfied the Department's duty of inquiry notwithstanding the availability of family members on both sides.  It did not.

In *H.B., supra*, 92 Cal.App.5th at page 720, the Court of Appeal reasoned that section 224.2, subdivision (b), does not "obligate county welfare departments to search for possible Indian ancestry without regard to cost or other practical considerations.  Rather, [section 224.2, subdivision (b),] is intended to ensure social workers 'ask an added question of extended family members whom [they] often already are investigating in their usual course of work.' [Citation.]  Despite its broad terms, section 224.2, subdivision (b) does not require inquiry with every adult living extended family member."

Although we recognize that in some cases there will be practical limits on the Department's duty of inquiry under section 224.2, subdivision (b), we do not agree that the scope of inquiry includes only those extended family members whom the social workers interview as part of the child welfare agency's

_____

of discretion."  *Kenneth D.* did not decide which standard applied because it was undisputed that the initial ICWA inquiry was inadequate.  (*Id*. at pp. 1101-1102.)

11

investigation into the allegations in the petition.  The Supreme Court in *Dezi C.* explained with respect to a child welfare agency's duty of inquiry:  "Agencies are already tasked with investigating the circumstances underlying the child's removal *and identifying and locating the child's extended family members* (§ 309, subds. (a), (e)); it is a rather simple task to ask those family members about Indian ancestry in this process.  In fact, courts have characterized the duty of inquiry as 'slight and swift.'" (*Dezi C., supra*, 16 Cal.5th at p. 1143, italics added; see § 309, subd. (e)(1) [if a child is removed, "the social worker shall conduct, within 30 days, an investigation in order to identify and locate all grandparents, parents of a sibling of the child, adult siblings, [and] other adult relatives of the child, as defined in paragraph (2) of subdivision (h) of Section 319" (defining "relatives" to include adults related to the child "within the fifth degree of kinship")].)

Thus, the *Dezi C.* court envisioned that a child welfare agency's investigation would include an investigation into the circumstances of the referral *and* the extended (and other) family members for purposes of placement of the child and ICWA.  Here, had the social workers attempted to contact the maternal grandfather, maternal aunt, and maternal uncle (whose contact information was available), a conversation about the children's Indian ancestry would have been "'slight and swift.'" (*Dezi C., supra*, 16 Cal.5th at p. 1143.)  And an inquiry of paternal grandfather could have been swift had the social workers asked Father or paternal grandmother for his contact information.

In any event, *H.B.* is distinguishable.  There, the father argued the Department did not perform an adequate inquiry because it did not interview the maternal grandfather and an

12

unidentified maternal aunt, although it had interviewed the parents, the paternal grandfather, the paternal grandmother, and the maternal great-uncle.[4] (*Id.* at pp. 717-719.) The *H.B.* court observed, in concluding the Department had performed an adequate inquiry, that the father had not identified who the maternal aunt was, and the mother was unable to provide any contact information for the maternal grandfather. Moreover, the Department's inquiry did not reveal any other individuals who might have had information about the family's ancestry. As the court explained, "'[W]e cannot ask the [Department] to intuit the names of unidentified family members or to interview individuals for whom no contact information has been provided.'" (*Id.* at p. 720.) Unlike the parents in *H.B.*, the parents in this case identified additional extended family members, and the Department could reasonably have obtained (or at least requested) the contact information.

We agree with the Department that in cases where it makes a good faith effort to locate an extended family member but is not successful, section 224.2 does not require the Department to take additional steps to locate the family member if there are other reasonably available family members who can provide sufficient information on the children's potential Indian ancestry. As the Supreme Court observed in *Dezi C.*, "[O]ur conclusion does not require reversal in all cases in which every

---

[4] The father in *H.B.* also argued the Department failed to interview the paternal step-grandmother and maternal stepsister, which the court observed did not fall within the definition of extended family members. (*H.B., supra,* 92 Cal.App.5th at pp. 719-720.) In this case, it is undisputed that the family members at issue are extended family members.

13

possible extended family member has not been asked about the child's Indian ancestry. . . .  Section 224.2 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries.  The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.'" (*Dezi C., supra*, 16 Cal.5th at p. 1140; see *In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [because the child welfare "[a]gency is not required to 'cast about' for information or pursue unproductive investigative leads," the agency did not have duty to interview the great-grandmother where the aunt represented that she had spoken with great-grandmother and had no reason to believe child was Indian child].)

But the Department is mistaken that its duty of inquiry is limited to interviewing a sufficient number of family members who can "reliably answer[] the question of whether there was reason to believe" the children were or may be Indian children, *regardless* of whether other reasonably available extended family members may be able to provide missing information on a child's ancestry.[5]  The Department argues that its interviews provided

_____

[5]     We note that Justice Groban in his dissent in *In re Dezi C., supra*, 16 Cal.5th at page 1169 stated his view (shared by three other justices (see *id*. at p. 1153 (conc. opn. of Kruger, J.)) with respect to review of a juvenile court's Cal-ICWA findings that "'the focus of the court's analysis should not be on the number of individuals interviewed, but on whether the agency's [Cal-ICWA] inquiry has yielded reliable information about a child's possible tribal affiliation.'"  Although the Supreme Court in *Dezi C.* had no occasion to consider the adequacy of the ICWA and Cal-ICWA

14

reliable information on the children's ancestry because the relatives who were interviewed "unequivocally denied Indian ancestry." But the forcefulness of the denials does not mean other reasonably available extended family members do not have meaningful information about the children's Indian ancestry. In most cases, the Department will not know the answer until the family member is interviewed.

With respect to Mother's family, the maternal aunt, maternal uncle, and maternal grandfather were reasonably available to the Department, yet no inquiry was made. The maternal aunt contacted the Department on October 3, 2023 to discuss placement with her, but the social worker did not inquire about the family's possible Indian ancestry. Although the maternal aunt did not call the social worker back (with respect to visitation and placement), the social worker had the aunt's contact information and could have contacted her to inquire about the children's ancestry. Likewise, Mother was in contact with the maternal uncle, who lived with the maternal grandmother. Although the social worker called the maternal grandmother, she never asked to speak with the uncle. The Department likewise made no effort to contact the maternal grandfather, with whom Mother "occasionally" had contact, and thus it had no information on Mother's paternal ancestry (other than from Mother).

---

investigation in that case given the concession by the Department that its inquiry fell "well short of complying with section 224.2" (*Dezi C.* at p. 1141), in this case, as discussed, the Department had reliable information on only two branches of the children's family tree.

15

With respect to Father's family, the social worker never asked Father or the paternal grandmother for the paternal grandfather's contact information (or full name), relying only on the information provided by paternal aunt Emily (who had a different father). Although the prison official responded to the social worker's inquiry about contact information for the paternal grandmother that Emily's contact information was "the only contact info [Father] has," that does not mean Father lacked information on the paternal grandfather (including his name). And nothing in the record suggests that the paternal grandmother could not have provided the paternal grandfather's contact information.

We recognize both grandmothers denied any Indian ancestry, but that does not mean the maternal and paternal grandfathers would not have had meaningful information about the children's Indian ancestry. Absent an inquiry of the grandfathers, the Department was missing information on two important branches of the family's ancestry—Mother's paternal family and Father's paternal family. Further, because Mother was raised by the maternal grandmother, it is not likely that Mother would have had information on her paternal ancestry. The maternal aunt and uncle may have information that Mother and the maternal grandmother did not have based on the siblings' own contacts with their father (maternal grandfather) or his family. Indeed, if the maternal grandfather cannot be reached, the maternal siblings may turn out to be the only source of information on Mother's paternal ancestry. (See *In re J.F.* (2025) 109 Cal.App.5th 468, 471 [child welfare agency did not satisfy its duty of inquiry because it "failed to make an effort to contact maternal grandmother . . . and maternal aunt . . . to

16

inquire whether the child was or might be an Indian child, even though the Department had contact information for those relatives"].)

The Department's contention that it had adequate information from the parents, the grandmothers, and a paternal sibling ignores the history of government separation of Indian families, as a result of which "parents may not be the best source of information about a child's Indian ancestry," and therefore, "the Legislature expressly mandated that, from the outset, child protective agencies expand their investigation of a child's possible Indian status beyond the child's parents." (*Dezi C., supra,* 16 Cal.5th at p. 1139; see *id.* at p. 1146 ["'generations who lived through trauma at the hands of state actors pass a lack of self-identification as Native American to younger generations, leaving only the older family members or extended family members with knowledge of' Indian ancestry"]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 432 ["parents may lack knowledge of a child's Indian ancestry even where the child's extended family members possess strong evidence of the child's possible Indian ancestry"].) The Department's inquiry beyond the parents to a single family member on the maternal side and two family members on the paternal side of the family—where there were additional extended family members who could have been contacted to provide missing information on the children's ancestry—fell far short of the Department's duty of inquiry.[6]

---

[6]     In *In re C.R, supra,* 112 Cal.App.5th at page 802, the Court of Appeal concluded substantial evidence supported the juvenile court's finding that ICWA did not apply where the maternal grandmother had denied Indian ancestry in mother's dependency

The juvenile court also erred in finding ICWA did not apply despite the Department's failure to satisfy its duty of inquiry under section 224.2, subdivision (b). (See *In re J.C., supra*, 77 Cal.App.5th at p. 74 ["the court's finding ICWA did not apply" was not supported by substantial evidence where the court "failed to ensure the Department fulfilled its duty of inquiry under section 224.2, subdivision (b)"]; *Antonio R., supra*, 76 Cal.App.5th at p. 432 [court's finding ICWA did not apply was erroneous where Department failed to inquire of child's extended family

---

case a year earlier (and the same juvenile court found ICWA did not apply) and the maternal grandfather was deceased, notwithstanding the Department's failure to inquire of the maternal aunt and maternal cousin, with whom the Department was in contact. The court reasoned on the "unusual circumstances presented" that "mother's sister (maternal aunt) would not have had any more information about the family's potential Indian ancestry than their own mother (maternal grandmother) had," and "given maternal grandmother's denial of Indian ancestry, the court reasonably could conclude asking maternal cousin about C.R.'s Indian ancestry was unnecessary." (*In re C.R.*, at p. 802.) Although we agree that a parent's sibling and cousin are unlikely to know more than the grandparent (the parent of the sibling), in some circumstances this would not be the case, especially where, as here, the child welfare agency has not interviewed all the grandparents. Moreover, the parent's sibling could have had conversations with his or her grandparent (the great-grandparent), who provided information not known to the grandparent. It would be a different situation if the agency was unable to locate or contact the parent's sibling, but where, as here, the sibling is readily available, section 224.2, subdivision (b)(2), requires an inquiry into the child's Indian ancestry.

members about possible Indian ancestry, and court failed to ensure the Department satisfied its duty of initial inquiry].) Although the court at the jurisdiction hearing properly ordered the Department to inquire of all known relatives of the parents about the children's potential Indian ancestry, at the March 10, 2025 selection and implementation hearing the court determined ICWA did not apply without asking the Department whether it had inquired of all reasonably available extended family members. It had not. As discussed, given the lack of information on Mother's and Father's paternal ancestry, substantial evidence does not support the court's finding that ICWA does not apply.

We therefore conditionally reverse the orders terminating Mother's and Father's parental rights with directions for the Department and the juvenile court to comply with ICWA and Cal-IWCA. (See *Dezi C., supra*, 16 Cal.5th at p. 1152 ["[A] judgment [must] be conditionally reversed when error results in an inadequate Cal-ICWA inquiry. It is only by conditionally reversing that we can ascertain whether error in the inquiry is prejudicial."].)

## DISPOSITION

The March 10, 2025 orders terminating Mother's and Father's parental rights are conditionally reversed. We direct the Department and the juvenile court to comply with the inquiry and notice provisions of ICWA and Cal-ICWA consistent with this opinion, including inquiring of the maternal grandfather, maternal aunt, maternal uncle, and paternal grandfather. If the court finds Claudia and Leila are Indian children, it shall conduct a new section 366.26 hearing, as well as all further proceedings,

19

in compliance with ICWA and Cal-ICWA.  If not, the original section 366.26 orders shall be reinstated.


                                    FEUER, J.

We concur:


        MARTINEZ, P. J.


        SEGAL, J.